

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SK:GKS/ANW
F. #2016R02162

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 9, 2018

By Hand and ECF

The Honorable Carol B. Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Francisco Canizales-Ramirez
                 Criminal Docket No. 16-658 (CBA)

Dear Judge Amon:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, and in response to the defendant's sentencing memorandum, dated August 7, 2018 (see Dkt. No. 73). On April 27, 2018—on the very eve of trial—the defendant pled guilty to a lesser-included charge of Count Three of the indictment, charging him with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Sentencing is scheduled for August 17, 2018, at 10:00 a.m. For the reasons stated below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines ("Guidelines") range of 63 to 78 months' imprisonment.

    I.    Background

         A.    Offense Conduct

      The Drug Enforcement Administration ("DEA") and Federal Bureau of Investigation ("FBI") have been conducting an investigation into a violent Mexican drug trafficking organization ("DTO"), known as the "H-2 DTO," an organization previously led by Juan Patron Sanchez, also known as "H-2," which is based in Nayarit and Sinaloa, Mexico.[1]

---

[1] In February 2017, Patron Sanchez and other top-level members of the H-2 DTO were killed in a conflict with the Mexican military. The H-2 DTO remains active under the command of a variety of surviving members.

In connection with this investigation, DEA agents in Las Vegas, Nevada received information on July 26, 2016, regarding an imminent shipment of heroin to Columbus, Ohio. (Presentence Investigation Report ("PSR") ¶ 4.) Agents learned that senior members of the cartel based in Mexico exchanged the cellular telephone number 614-603-6532 (the "6532 Number") to indicate the contact information for the person responsible for receiving the heroin in Columbus. Soon thereafter, agents obtained location-tracking information for this telephone, which revealed its user consistently spent the night in the area of 2796 Key Place in Columbus, Ohio—the defendant's home address. The location information further revealed that the cellular telephone traveled consistently with the defendant's movements from the Key Place address to a supermarket he owned in Columbus. On August 12, 2016, agents conducted surveillance that confirmed that the cellular telephone was in the defendant's possession. (PSR ¶¶ 5-11.)

Agents then used historical location data, among other evidence, to reconstruct the narcotics smuggling trip in late July 2016. Telephone records revealed that the defendant was in contact with cellular telephone number 602-826-7432 (the "7432 Number") 11 times on July 29, 2016. All but one of the 11 contacts occurred between 11 a.m. and noon that day. The defendant (carrying the 6532 Number) then left Columbus on a rapid cross-country trip to the New York City area to deliver the narcotics. (PSR ¶¶ 7-9.) On July 31, 2016, DEA agents in Albuquerque, New Mexico seized approximately $8,000 in United States currency from co-defendant Mario Campos-Avendano, which is consistent with a courier fee. (PSR ¶ 8.) They discovered vacuum-sealed currency located in a false compartment built into the bottom of Campos-Avendano's suitcase. This compartment also contained evidence of narcotics packaging materials. (Id.) Crucially, Campos-Avendano had the cellular telephone associated with the 7432 Number in his possession. (Id.)

The stop of Campos-Avendano in New Mexico thus completed the picture of the defendant's drug smuggling activity. The defendant's telephone number was passed among senior members of the cartel in Mexico—indicating that he was a trusted narcotics trafficker. He then met Campos-Avendano in Columbus to receive the narcotics on July 29, 2016. Shortly after meeting Campos-Avendano, the defendant hurried to New York to deliver the illicit cargo.

    B.    <u>Guilty Plea and Safety Valve Eligibility</u>

On April 27, 2018—on the very eve of trial—the defendant pled guilty to a lesser-included charge of Count Three of the indictment, charging him with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Although the defendant would ordinarily be subject to a five-year statutory mandatory minimum sentence, he has met with the government and provided a complete and truthful statement of his involvement in the instant offense. He is thus eligible for safety-valve relief under U.S.S.G. § 2D1.1(b)(17) and 18 U.S.C. § 3553(f). As a result, the Court may impose a sentence without regard to the statutory minimum sentence.

## II. Guidelines Calculation

The Probation Department's calculation of the applicable Guidelines range is not in dispute. The parties agree that the applicable base offense level is 30 and that the defendant is entitled to a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) as well as a two-point safety-valve reduction under U.S.S.G. § 2D1.1(b)(17). The defendant's adjusted offense level is 26, and he is in Criminal History Category I. Thus, the applicable Guidelines range of imprisonment is 63 to 78 months.

## III. Legal Standard

In United States v. Booker, 543 U.S. 220, 222 (2005), which held that the Guidelines are advisory, the Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). After Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the court] may not presume that the Guidelines range is reasonable. [The court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

## IV. A Guidelines Sentence Is Appropriate And Necessary In This Case

The defendant's conduct is extremely serious, and only a correspondingly substantial sentence within the Guidelines range would be sufficient to comply with the purposes of sentencing under § 3553(a).

The opioid crisis in this country is a recognized public health emergency. Thousands of victims are dying every year from overdoses of heroin and other drugs. This epidemic is fueled, in part, by large-scale Mexican drug trafficking organizations that move these poisons from Mexico to the streets of American towns and cities. These cartels depend on people like the defendant who complete the last leg of the journey of a kilogram of heroin from the hills of western Mexico to end users in the United States. Narcotics simply cannot get from the southwestern United States border to major metropolitan areas like New York without the active and willing participation of criminals like the defendant. The justice system should respond to the opioid crisis by meting out harsh punishment to those who peddle dangerous drugs. Such a response assigns the appropriate moral culpability to all traffickers who have helped to bring this crisis about—especially those whose task is to transport

3

narcotics from Ohio to New York—and warrants the imposition of a commensurate punishment.

Here, the defendant received and transported a significant and valuable quantity of heroin for further distribution. Yet, his role cannot be described as that of an ordinary courier because, notably, senior members of the cartel exchanged the defendant's telephone number. That exchange demonstrates that the defendant was a trusted participant in the scheme and not merely an unwitting flunky. Indeed, the parties agree that the defendant should receive no downward adjustment under the Guidelines for a minor or minimal role. Accordingly, his conduct, which, as stated above, fuels the opioid crisis, merits a Guidelines sentence.

A sentence within the Guidelines range would also deter further criminal activity by the defendant and others. The perceived distance between the criminal act and its downstream consequences can leave the impression that narcotics traffickers like the defendant are less morally culpable than their superiors in large cartels. But, they should be held to the same standard and the Guidelines' careful calibration of punishment with the amount of narcotics involved in the offense, among other sentencing factors, reflects this appropriate balance. A Guidelines sentence would send a message to the next would-be trafficker that his or her conduct will be met with the full force of the law. A substantial, but just, sentence in every case like this reinforces that message, however incrementally, and helps to encourage others not to participate in dangerous narcotics trafficking activity.

V.　Conclusion

For these reasons, the government respectfully requests that the Court sentence the defendant to a Guidelines sentence of 63 to 78 months' imprisonment.  Such a sentence would reflect the seriousness of the defendant's conduct and will provide adequate deterrence to others contemplating similar acts.  18 U.S.C. § 3553(a).

Respectfully Submitted,

RICHARD P. DONOGHUE
United States Attorney

By:　　/s/ G. Karthik Srinivasan
G. Karthik Srinivasan
Alicia N. Washington
Assistant United States Attorneys
(718) 254-7000

cc:　Clerk of the Court (CBA) (by ECF and email)
　　Eric Creizman, Esq. (by ECF and email)
　　Melissa Madrigal, Esq. (by ECF and email)
　　Victoria Main, United States Probation Officer (by ECF and email)