# EXHIBIT C

1

```
                                                              1
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    -------------------------------x
                                           16-CR-658(CBA)
3    UNITED STATES OF AMERICA,
                                           United States Courthouse
4             Plaintiff,                   Brooklyn, New York

5             -against-                    August 17, 2018
                                           10:00 a.m.
6    FRANCISCO CANIZALES-RAMIEREZ,

7             Defendant.

8    -------------------------------x

9
              TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
10               BEFORE THE HONORABLE CAROL B. AMON
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
14                            271 Cadman Plaza East
                              Brooklyn, New York 11201
15                            BY:  GIRISH KARTHIK SRINIVASAN
                                   ALICIA NICOLE WASHINGTON
16                            Assistant United States Attorneys

17
     For the Defendant:       PIERCE BAINBRIDGE BECK PRICE &
18                            HECHT LLP
                              747 Third Avenue
19                            Suite 200
                              New York, New York 10017
20                            BY:  ERIC M. CREIZMAN, ESQ.

21
     Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
22                            Phone:  718-613-2330
                              Fax:    718-804-2712
23                            Email:  LindaDan226@gmail.com

24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1               (In open court.)
2               THE COURTROOM DEPUTY:  All rise.
3               This is a criminal cause for a sentencing, Docket
4    Number 16-CR-658, U.S.A. versus Canizales-Ramirez, et al.
5               Spanish interpreter already sworn.
6               Counsels, please state your name for the record.
7               MR. SRINIVASAN:  Good morning, Your Honor.  Karthik
8    Srinivasan and Alicia Washington for the government.  And
9    we're joined by Probation Officer Michelle Murphy.
10              THE PROBATION OFFICER:  Good morning, Your Honor.
11              MR. CREIZMAN:  Good morning, Your Honor.  Eric
12   Creizman on behalf of Francisco Canizales-Ramirez.
13              THE COURT:  Good morning.  Everyone can be seated.
14              This matter is on for sentencing.
15              Mr. Creizman, is there any legal reason why we
16   shouldn't proceed with sentencing today?
17              MR. CREIZMAN:  No, Your Honor.
18              THE COURT:  Have you reviewed the presentence
19   report?
20              MR. CREIZMAN:  Yes.
21              THE COURT:  I should say, just to make sure that I
22   have all the documents.  I have a presentence report.  A
23   submission by the defendant dated August 7.  A submission by
24   the government dated August 9th.
25              Are there any other materials that I should have?

PROCEEDINGS                                                      3

1              MR. SRINIVASAN:  No, Your Honor.
2              MR. CREIZMAN:  No, Your Honor.
3              THE COURT:  All right.
4              Mr. Creizman, are the guidelines accurately
5    calculated in the report?
6              MR. CREIZMAN:  Yes, Your Honor.
7              THE COURT:  And does the government believe they're
8    correct as well?
9              MR. SRINIVASAN:  Yes, Your Honor.
10             THE COURT:  And that is the sentencing range of 63
11   to 78 months, correct?
12             MR. CREIZMAN:  Yes, Your Honor.
13             THE COURT:  All right.  Are there any factual
14   challenges to any of the matters set forth in the probation
15   report?
16             MR. CREIZMAN:  No, Your Honor, I don't believe so.
17   I think that in the -- at least in the -- before trial, there
18   was an idea that Mr. Canizales-Ramirez was the driver of
19   narcotics to New York.  I don't think that that's still the
20   idea.  He certainly played a meaningful role in the
21   distribution of the narcotics, but I think that the actual
22   travel to New York wasn't what he was doing.  That's all.
23             THE COURT:  Okay.
24             MR. CREIZMAN:  That was --
25             THE COURT:  He was the recipient of the drugs here;

1  is that correct?
2          MR. SRINIVASAN:  Yes, Your Honor, he was the
3  trafficker.
4          MR. CREIZMAN:  Right.  No question.  Just on that
5  alone.
6          But I think the presentence report doesn't say
7  anything differently, to my understanding.
8          THE COURT:  Okay.  All right.
9          Mr. Canizales-Ramirez, was the presentence report
10 translated to you?
11         THE DEFENDANT:  Yes, it was.
12         THE COURT:  Did you have an adequate opportunity to
13 discuss the contents of that report with your attorney?
14         THE DEFENDANT:  Yes.
15         THE COURT:  Are you satisfied to have him represent
16 you?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Okay.  And, Mr. Creizman, do you want to
19 be heard?
20         MR. CREIZMAN:  Your Honor, I think that what -- I
21 mean I think that what we summarized in our submission is
22 essentially -- there are mitigating factors here.  There are
23 obviously aggravating factors that the government sets forth
24 in its submission and that the Probation Department
25 identifies.

1    I think it would be very important -- Mr. Canizales
2    worked on a statement with Ms. Madrigal, my co-counsel, and I
3    think it's important to hear what he has to say about this.
4           On just one point, the government makes the --
5    argues that general deterrence is important here and, you
6    know, I think that that's -- that it is important, but
7    Mr. Canizales-Ramirez did try -- I think he got caught up in
8    a -- in some illegal activity here but he wasn't -- I don't
9    think he came into this country with the idea of committing
10   crimes, and I think that his past history evidences that he's
11   a strong, hard worker trying to help out his family.
12          He's going to be sent back to Mexico.  I'm not sure
13   that a more significant sentence to achieve the goals of
14   general deterrence is going to have that effect, given the
15   fact that he's going to be deported to Mexico, given the fact
16   that I don't know that this sentence is going to be heard in
17   Mexico.  And that's basically my assessment.
18          If Your Honor has any questions, I'm happy to
19   answer.
20          THE COURT:  No.
21          Does the government want to say anything before I
22   hear from Mr. Canizales-Ramirez?
23          MR. SRINIVASAN:  Yes, Your Honor, just briefly.
24          On the point that Mr. Creizman made about how the
25   defendant is to be deported anyway to Mexico, I think the

1   implication of what I'm hearing is that somehow deportation is
2   a penalty and that should be, you know, factored in.
3           And I don't think that's the right way to look at
4   this, Your Honor.  I don't mean it in terms of legally that
5   removal proceedings are civil and this is criminal.  I don't
6   mean that in a technical sense.
7           As set forth in the PSR, the defendant came to this
8   country.  He was deported, and he's now subject to an order of
9   deportation that happened in 2012.  So removal and the
10  possibility of removal, were table stakes for this defendant.
11  And after that happened in 2012, he came here and engaged in
12  this criminal conduct.
13          So I think that it's important for this serious
14  criminal conduct to have its own independent assessment,
15  regardless of the possibility of removal for this defendant.
16          THE COURT:  Well, it's also not like he was a
17  permanent resident who had real strong ties to this country
18  and now has to leave.  He never had a right to be here to
19  begin with.
20          MR. SRINIVASAN:  That's correct, Your Honor.  That's
21  exactly right.
22          I think also on the point about general deterrence
23  that Mr. Creizman was making, and I briefly want to make two
24  points before we rest on our submission.
25          I think the first is that it's important to note

1   that this is not the first time the defendant did this.
2   During the safety valve proffer, he admitted to us that there
3   were multiple times in which he's been involved in this kind
4   of activity where he's kind of the conduit for the drugs to
5   pass through Columbus.
6          So it's not just he got caught up in something, he
7   made a mistake, he was looking to make a little bit of money.
8   This has become part of his lifestyle, and part of the way
9   that he was funding his business, funding his lifestyle.  I
10  think that he was at one point trying to open a club called
11  Club Dimante in Columbus, using it to fund that.  So this was
12  becoming a core part what he was doing in Columbus.
13         And finally, Judge, on this general deterrence
14  point, I think that, as much as anyone, I think we AUSAs are
15  guilty of treating these cases somewhat abstractly.  We talk
16  about kilos, kilograms, months without really, I think,
17  breaking down what the impact of this kind of conduct is, and
18  I think that's important for Your Honor to consider.
19         A kilogram of heroin, it's a thousand grams of
20  heroin.  A typical dose of heroin is maybe a tenth of a gram,
21  two tenths of a gram.  We're talking thousands, if not tens of
22  thousands of doses, of heroin coming into the New York area in
23  part because of this man's conduct here.  Heroin that would
24  not come without people like him transporting it, either from
25  the southwest or through transshipment points in places like

1    Columbus.
2              And as Your Honor well knows, we set forth in our
3    sentencing submission, the opioid crisis in this country is
4    real.  We are thousands of people dying.  We just heard the
5    other day the statistics for 2016 that there were over 60,000
6    people who died.  Not all from heroin, of course, but
7    heroine's a big part of that.
8              THE COURT:  Well, people, if I'm correct, the
9    distinction is the pills, the OxyContin, oxycodone leads to
10   heroin and then the people are not as true heroin addicts and
11   they overdose on heroin.
12             MR. SRINIVASAN:  Absolutely, Your Honor.  That's
13   exactly right.
14             And the preliminary statistics for 2017, they
15   indicate that that number increases to over 70,000.  This is a
16   real problem that has a human face that is somewhat, we think
17   of it sometimes as downstream from the conduct of people like
18   the defendant.
19             But I think he's just as morally culpable for his
20   role in this crisis and what it's doing to American
21   communities.  I think that a significant sentence, Your Honor,
22   one within the guidelines range, should take that into
23   account.
24             And if the Court has any other questions, I'm happy
25   to address them.

1       THE COURT:  Well, one thing, and I have to ask you,
2  Mr. Creizman.  The Probation Department suggests he has the
3  ability to pay a fine.
4       MR. CREIZMAN:  The answer's yes, Your Honor.  I mean
5  based on the analysis of his assets, it seems that he does.
6  And I don't -- and I would add that I don't believe, my
7  understanding, is that these assets are not solely or, you
8  know, largely due to narcotics activity but, of course, I mean
9  I don't know, I can't be a witness to that, I only know what
10 the evidence is before me.
11      But I would say that just in response to -- just to
12 clarify one argument that I made.  I wasn't arguing that his
13 deportation is an extra penalty on him, my argument is
14 essentially that in terms of general deterrence, I think
15 that -- number one, I think that perhaps specific deterrence
16 is important because he needs to know not to be able to come
17 back to the country and commit crimes.
18      In terms of general deterrence, to put the opioid
19 crisis, while extraordinarily serious, just -- I mean there's
20 so many people like Mr. Canizales-Ramirez who are
21 intermediaries who are traffickers, but I mean there's -- this
22 is a very systemic problem and to impose a much higher
23 sentence or a significantly higher sentence on
24 Mr. Canizales-Ramirez solely because of his involvement in the
25 distribution of heroin, I think is somewhat unfair as, you

1  know, on the individual basis.

2  THE COURT: Mr. Canizales-Ramirez, do you want to
3  say anything before the Court imposes sentence?

4  THE DEFENDANT: I did write these words out to be
5  able to address you.

6  I would like to apologize to the Court for my
7  behavior. I understand that I committed a serious crime and I
8  need to be punished for my conduct.

9  In deciding my sentence, I ask you for leniency so
10 that I can return to my family in Mexico. I selfishly
11 participated in this criminal conduct and put my children at
12 risk, in particular my daughter, Lisa. I relied on being sent
13 money to purchase her epilepsy medication.

14 Since my arrest, my family has had great difficulty
15 in getting and paying for my daughter's medication, and they
16 have been asking friends and relatives for favors. This
17 burden has fallen on their shoulders and I am truly remorseful
18 that my conduct in this case created that issue for my child.

19 I know that I entered the United States on several
20 occasions without permission to do so, but I can assure you
21 that I will stay in Mexico and not return to this country. I
22 only want to make a living in Mexico so that I can provide for
23 my family.

24 I do want to say that during the occasions I resided
25 in the United States over the last few years, I worked really

1  hard at lawful jobs so that I could make a living and send
2  money back home to Mexico.
3          My conduct that resulted in my arrest in this case
4  is not representative of my hard work in the United States.
5  My decision to become involved in this drug trafficking was a
6  terrible and unnecessary decision for which I will never
7  forgive myself.
8          I thank you for listening to my comments and I beg
9  that you exhibit leniency in sentencing me -- in my sentence.
10         THE COURT:  All right, thank you.  You can be
11 seated.
12         I have obviously read the presentence report,
13 considered the government's letter, the defendant's letter,
14 and the statements here.
15         Procedurally I have calculated the guideline range,
16 which is 63 to 70 months.  I, of course, recognize that I'm
17 not required to impose a sentence within that guideline range,
18 but looking at the range and both most importantly the
19 significant considerations that are set forth in 3553 of
20 Title 18, I believe that a sentence within that guideline
21 range is one that is appropriate in this case.  And so let me
22 just address some of those considerations.
23         MR. SRINIVASAN:  Your Honor, I'm sorry, I think you
24 said 63 to 70 months.
25         THE COURT:  I'm sorry, 70 -- I misspoke, it's 78

1  months.  Correct, I misspoke.  Thank you.

2           But turning to those considerations.  One is the
3  seriousness of the offense, and I think it goes without saying
4  that heroin distribution in this country, the receipt and
5  distribution of heroin, which the defendant is charged and has
6  admitted his guilt, is a very, very, very serious offense.

7           The sentence has to promote respect for the law and
8  provide just punishment.  I have considered the need for
9  deterrence, both specific deterrence to this defendant to have
10 him understand that this type of conduct is met with
11 significant penalties, and also while I think general
12 deterrence here is a consideration as well.

13          I have also taken into account sentences imposed on
14 people similarly situated to Mr. Canizales-Ramirez, as well as
15 his own history and characteristics.

16          So having taken all of that into account, it's the
17 sentence of this Court that Mr. Canizales-Ramirez is committed
18 to the custody of Bureau of Prisons for a period of 68 months
19 to be followed by a three-year term of supervised release.
20 I'll impose a special assessment of $100.

21          It is not disputed here that the defendant is
22 capable of paying any fine, so I'm going to impose a fine of
23 $2,000 payable at a rate of $25 per quarter while in the
24 Bureau of Prisons, and 10 percent of his gross monthly income
25 while on supervised release.

1     In terms of conditions of his supervised release, I
2 will make it: You must abide by all instructions of
3 immigration authorities in the United States. If removed, you
4 may not reenter illegally. And I believe I also mentioned the
5 $100 special assessment.
6     Did Mr. Canizales-Ramirez's, this sentence, preclude
7 an appeal?
8     MR. SRINIVASAN: It does, Your Honor, the appellate
9 waiver said 97 months.
10     THE COURT: Okay, Mr. Canizales-Ramirez, the
11 government tells me that they believe that you have waived
12 your right to appeal based on your plea agreement.
13     Do you agree with that, Mr. Creizman?
14     MR. CREIZMAN: Yes, I think it was 97 months; is
15 that right?
16     THE COURT: So I believe that you waived your right
17 to appeal under the circumstances, but if there is any reason
18 that you think that there is some basis for appeal, I should
19 let you know that any notice of appeal has to be filed within
20 14 days of today's date.
21     Do you understand that?
22     THE DEFENDANT: I understand.
23     THE COURT: Is there anything I've overlooked?
24     MR. SRINIVASAN: No, Your Honor.
25     I would just note for the record that although there

1  was a forfeiture provision in the agreement, based upon the
2  information that we received, we're not seeking an order of
3  forfeiture.
4          THE COURT: You're not?
5          MR. SRINIVASAN: We're not.
6          THE COURT: Okay.
7          Anything else, Mr. Creizman?
8          MR. CREIZMAN: Yes, Your Honor.
9          If the Court would recommend to the Bureau of
10 Prisons that Mr. Canizales-Ramirez be committed to a facility,
11 the facility FCI Elkton.
12         THE COURT: Where is that?
13         MR. CREIZMAN: In Ohio, which is near Columbus,
14 which is near -- which is relatively near Columbus where
15 people he knows. And in addition, I believe that people who
16 are deportable are often sent to that facility. That's my
17 understanding.
18         THE COURT: I don't know anything about the levels
19 of prison or whether that's an appropriate institution. But
20 what I will recommend is that, if possible, he be incarcerated
21 in a facility near where people he knows are, which is in
22 Ohio.
23         MR. CREIZMAN: Yes, Your Honor.
24         THE COURT: And I'll make that recommendation, but I
25 don't know if that facility is appropriate.

1    MR. SRINIVASAN: Fine, Your Honor.

2    We move to dismiss Counts One and Two of the

3 indictment.

4    THE COURT: The application is granted.

5    MR. SRINIVASAN: Thank you.

6

7    (Whereupon, the matter was concluded.)

8

9                *   *   *   *   *

10

11

12 I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

13

14 s/ Linda D. Danelczyk                January 7, 2019

15

     LINDA D. DANELCZYK                              DATE
16

17

18

19

20

21

22

23

24

25